Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

JORGE OCAMPO, RICARDO ALBERTO
ZABALETA BATISTA, YONATHAN
GARZON, JAVIER MORA, JOSE
CARRERO, and RODOLFO CARVAJAL,
*individually and on behalf of others similarly situated,*

**COMPLAINT**

*Plaintiffs,*

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

-against-

**ECF Case**

PAVEL PARTITION INSTALLERS INC
(D/B/A PPI INSTALLER), TATYANA
GOLDBERG INC. (D/B/A TGI
INSTALLERS), PAVEL GARCIA
VILLALOBOS, JORGE CERQUERA , NICK
DOE , RAMON DOE , and PANCHO DOE ,

*Defendants.*
-------------------------------------------------------X

Plaintiffs Jorge Ocampo, Ricardo Alberto Zabaleta Batista, Yonathan Garzon, Javier Mora,

Jose Carrero, and Rodolfo Carvajal , individually and on behalf of others similarly situated

(collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C.,

upon their knowledge and belief, and as against Pavel Partition Installers Inc (d/b/a PPI Installer),

Tatyana Goldberg Inc. (d/b/a TGI Installers), ("Defendant Corporations"), Pavel Garcia

Villalobos, Jorge Cerquera, Nick Doe, Ramon Doe, and Pancho Doe, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Pavel Partition Installers Inc (d/b/a PPI Installer), Tatyana Goldberg Inc. (d/b/a TGI Installers), Pavel Garcia Villalobos, Jorge Cerquera, Nick Doe, Ramon Doe, and Pancho Doe.

2.       Defendants own, operate, or control two construction companies, located at 1040 Oak Tree Ln, Annapolis, MD 21409 under the name "PPI Installer" and at 6930 St. Thomas Rd, Elkridge, MD 21075 under the name "TGI Installers".

3.      Upon information and belief, individual Defendants Pavel Garcia Villalobos, Jorge Cerquera, Nick Doe, Ramon Doe, and Pancho Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as a joint or unified enterprise.

4.      Plaintiffs were employed as installers at the construction corporations' projects in Manhattan.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

9.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.      Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district since Plaintiffs were employed by Defendants to work in this district.

## PARTIES

*Plaintiffs*

13.      Plaintiff Jorge Ocampo ("Plaintiff Ocampo" or "Mr. Ocampo") is an adult individual residing in Queens County, New York.

14.      Plaintiff Ocampo was employed by Defendants at Pavel Partition Installers Inc. and Tatyana Goldberg Inc. from approximately July 2018 until on or about January 1, 2019.

15.      Plaintiff Ricardo Alberto Zabaleta Batista ("Plaintiff Zabaleta" or "Mr. Zabaleta") is an adult individual residing in Queens County, New York.

16.    Plaintiff Zabaleta was employed by Defendants at Pavel Partition Installers Inc. and Tatyana Goldberg Inc. from approximately September 18, 2018 until on or about December 13, 2018.

17.    Plaintiff Yonathan Garzon ("Plaintiff Garzon" or "Mr. Garzon") is an adult individual residing in Richmond County, New York.

18.    Plaintiff Garzon was employed by Defendants at Pavel Partition Installers Inc. and Tatyana Goldberg Inc. from approximately July 2018 until on or about June 2019.

19.    Plaintiff Javier Mora ("Plaintiff Mora" or "Mr. Mora") is an adult individual residing in Queens County, New York.

20.    Plaintiff Mora was employed by Defendants at Pavel Partition Installers Inc. and Tatyana Goldberg Inc. from approximately June 2018 until on or about February 2019.

21.    Plaintiff Jose Carrero ("Plaintiff Carrero" or "Mr. Carrero") is an adult individual residing in Queens County, New York.

22.    Plaintiff Carrero was employed by Defendants at Pavel Partition Installers Inc. from approximately July 2018 until on or about January 1, 2019.

23.    Plaintiff Rodolfo Carvajal ("Plaintiff Carvajal" or "Mr. Carvajal") is an adult individual residing in New York County, New York.

24.    Plaintiff Carvajal was employed by Defendants at Pavel Partition Installers Inc. and Tatyana Goldberg Inc. from approximately end of June 2018 until on or about December 2018.

*Defendants*

25.    At all relevant times, Defendants owned, operated, or controlled two construction companies, located at 1040 Oak Tree Ln, Annapolis, MD 21409 under the name "PPI Installer" and at 6930 St. Thomas Rd, Elkridge, MD 21075 under the name "TGI Installers".

26.     Upon information and belief, Pavel Partition Installers Inc (d/b/a PPI Installer) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1040 Oak Tree Ln, Annapolis, MD 21409.

27.     Upon information and belief, Tatyana Goldberg Inc. (d/b/a TGI Installers) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 6930 St. Thomas Rd, Elkridge, MD 21075.

28.     Defendant Pavel Garcia Villalobos is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pavel Garcia Villalobos is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Pavel Garcia Villalobos possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Jorge Cerquera is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jorge Cerquera is sued individually in his capacity as a manager of Defendant Corporations. Defendant Jorge Cerquera possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Nick Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nick Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Nick Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant Ramon Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ramon Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Ramon Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Pancho Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pancho Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Pancho Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

33.     Defendants operate two construction companies which perform projects in the Hudson Yards section of Manhattan in New York City.

34.     Individual Defendants, Pavel Garcia Villalobos, Jorge Cerquera, Nick Doe, Ramon Doe, and Pancho Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

35.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

37.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

38.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

39.     Upon information and belief, Individual Defendant Pavel Garcia Villalobos operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for his own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of his own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

40.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.    In each year from 2018 until 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

43.    Plaintiffs are former employees of Defendants who were employed as installers.

44.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C.

216(b).

*Plaintiff Jorge Ocampo*

45.    Plaintiff Ocampo was employed by Defendants from approximately June 2018 until

on or about February 2019.

46.    Defendants employed Plaintiff Ocampo as an installer.

47.    Plaintiff Ocampo regularly handled goods in interstate commerce, such as

construction materials and other supplies produced outside the State of New York.

48.    Plaintiff Ocampo's work duties required neither discretion nor independent

judgment.

49.    Throughout his employment with Defendants, Plaintiff Ocampo regularly worked in

excess of 40 hours per week.

50.    From approximately June 2018 until on or about August 2018, Plaintiff Ocampo

worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays through Sundays

(typically 60 hours per week).

51.    From approximately September 2018 until on or about February 2019, Plaintiff

Ocampo worked from approximately 7:00 a.m. until on or about 10:00 p.m. to 11:00 p.m. on

Wednesdays and Saturdays, from approximately 7:00 a.m. until on or about 7:00 p.m. to 8:00 p.m.

Mondays, Tuesdays, Thursdays, and Fridays, and from approximately 8:00 a.m. until on or about

6:00 p.m. on Sundays (typically 90 to 94 hours per week).

52.    Throughout his employment, Defendants paid Plaintiff Ocampo his wages in cash.

53.     From approximately July 2018 until on or about January 1, 2019, Defendants paid Plaintiff Ocampo $18.00 per hour.

54.     Plaintiff Ocampo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

55.     For example, Defendants required Plaintiff Ocampo to work an additional hour past his scheduled departure time every day for the last two weeks of December 2018, and did not pay him for the additional time he worked.

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ocampo regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not provide Plaintiff Ocampo an accurate statement of wages, as required by NYLL 195(3).

58.     Defendants did not give any notice to Plaintiff Ocampo, in English and in Spanish (Plaintiff Ocampo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

59.     Defendants required Plaintiff Ocampo to purchase "tools of the trade" with his own funds—including a laser, levels, plastic hammers, drillers, and hexagonal tools.

*Plaintiff Ricardo Alberto Zabaleta Batista*

60.     Plaintiff Zabaleta was employed by Defendants from approximately September 18, 2018 until on or about December 13, 2018.

61.     Defendants employed Plaintiff Zabaleta as a glass installer.

62.     Plaintiff Zabaleta regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

63.     Plaintiff Zabaleta's work duties required neither discretion nor independent judgment.

64.     Throughout his employment with Defendants, Plaintiff Zabaleta regularly worked in excess of 40 hours per week.

65.     From approximately September 18, 2018 until on or about December 13, 2018, Plaintiff Zabaleta worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays, Tuesdays, Thursdays, and Fridays and from approximately 7:00 a.m. until on or about 5:00 p.m. and from approximately 7:00 p.m. until on or about 1:00 a.m., on Wednesdays (typically 56 hours per week).

In addition, on six occasions, Plaintiff Zabaleta worked from approximately 7:00 a.m. until on or about 5:00 p.m. on Saturdays (typically 66 hours per week) and on at least three occasions he worked the same schedule on Sundays (typically 76 hours per week).

66.     Throughout his employment, Defendants paid Plaintiff Zabaleta his wages by check.

67.     From approximately July 1, 2018 until on or about July 7, 2018, Defendants paid Plaintiff Zabaleta $16.00 per hour.

68.     From approximately July 7, 2018 until on or about July 31, 2018, Defendants paid Plaintiff Zabaleta $18.00 per hour.

69.     From approximately August 1, 2018 until on or about December 12, 2018, Defendants paid Plaintiff Zabaleta $17.00 per hour.

70.     Defendants took improper and illegal deductions of Plaintiff Zabaleta's wages; specifically, Defendants deducted 1 hour from Plaintiff Zabaleta even if he arrived only 10 minutes late.

71.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zabaleta regarding overtime and wages under the FLSA and NYLL.

72.     Defendants did not provide Plaintiff Zabaleta an accurate statement of wages, as required by NYLL 195(3).

73.     Defendants did not give any notice to Plaintiff Zabaleta, in English and in Spanish (Plaintiff Zabaleta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

74.     Defendants required Plaintiff Zabaleta to purchase "tools of the trade" with his own funds—including a drill and drill batteries.

*Plaintiff Yonathan Garzon*

75.     Plaintiff Garzon was employed by Defendants from approximately July 6, 2018 until on or about June 2019.

76.     Defendants employed Plaintiff Garzon as a glass and furniture installer.

77.     Plaintiff Garzon regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

78.     Plaintiff Garzon's work duties required neither discretion nor independent judgment.

79.     Throughout his employment with Defendants, Plaintiff Garzon regularly worked in excess of 40 hours per week.

80.     From approximately July 2018 until on or about August 2018, Plaintiff Garzon worked from approximately 7:00 a.m. until on or about 5:00 p.m., 7 days a week (typically 70 hours per week).

81.     From approximately September 2018 until on or about February 2019, Plaintiff Garzon worked from approximately 7:00 a.m. until on or about 10:00 p.m. to 11:00 p.m., on

Wednesdays and Saturdays, from approximately 7:00 a.m. until on or about 7:00 p.m., or 8:00 p.m., on Mondays, Tuesdays, Thursdays, and Fridays, and from approximately 8:00 a.m. until on or about 6:00 p.m., on Sundays (typically 90 to 94 hours per week).

82.     From approximately March 2019 until on or about June 2019, Plaintiff Garzon worked from approximately 5:00 a.m. until on or about 3:00 p.m., seven days a week (typically 70 hours per week).

83.     For approximately one month, Defendants paid Plaintiff Garzon his wages in cash.

84.     Throughout the remainder of his employment, Defendants paid Plaintiff Garzon his wages by check.

85.     From approximately July 2018 until on or about June 2019, Defendants paid Plaintiff Garzon $18.00 per hour.

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garzon regarding overtime and wages under the FLSA and NYLL.

87.     Defendants did not provide Plaintiff Garzon an accurate statement of wages, as required by NYLL 195(3).

88.     Defendants did not give any notice to Plaintiff Garzon, in English and in Spanish (Plaintiff Garzon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

89.     Defendants required Plaintiff Garzon to purchase "tools of the trade" with his own funds—including a driller, a laser, a circular saw, hexagonal tools, and hammers.

*Plaintiff Javier Mora*

90.     Plaintiff Mora was employed by Defendants from approximately the last week of June 2018 until on or about February 2019.

91.    Defendants employed Plaintiff Mora as an installer.

92.    Plaintiff Mora regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

93.    Plaintiff Mora's work duties required neither discretion nor independent judgment.

94.    Throughout his employment with Defendants, Plaintiff Mora regularly worked in excess of 40 hours per week.

95.    From approximately June 2018 until on or about August 2018, Plaintiff Mora worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays through Saturdays (typically 60 hours per week).

96.    From approximately September 2018 until on or about February 2019, Plaintiff Mora worked from approximately 7:00 a.m. until on or about 6:00 p.m., on Mondays, Tuesdays, and Thursdays, from approximately 7:00 a.m. until on or about 10:00 p.m., Wednesdays and Fridays, and from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays (typically 73.5 hours per week).

97.    In addition, on some occasions from September 2018 until on or about February 2019, Plaintiff Mora worked from approximately 7:00 a.m. until on or about 10:00 p.m. on Saturdays (typically 80 hours per week), and on some occasions he worked from approximately 7:00 a.m. until on or about 3:30 p.m. on Sundays (typically 78.5 hours per week).

98.    For approximately the first three weeks of his employment, Defendants paid Plaintiff Mora his wages in cash.

99.    For the remainder of his employment, Defendants paid Plaintiff Mora his wages by check.

100.    From approximately June 2018 until on or about February 2019, Defendants paid Plaintiff Mora $18.00 per hour.

101.    Defendants did not pay Plaintiff Mora any wages for his three-hour introductory training period.

102.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mora regarding overtime and wages under the FLSA and NYLL.

103.    Defendants did not provide Plaintiff Mora an accurate statement of wages, as required by NYLL 195(3).

104.    Defendants did not give any notice to Plaintiff Mora, in English and in Spanish (Plaintiff Mora's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

105.    Defendants required Plaintiff Mora to purchase "tools of the trade" with his own funds—including 1 drill.

*Plaintiff Jose Carrero*

106.    Plaintiff Carrero was employed by Defendants from approximately July 2018 until on or about January 1, 2019.

107.    Defendants employed Plaintiff Carrero as a furniture installer.

108.    Plaintiff Carrero regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

109.    Plaintiff Carrero's work duties required neither discretion nor independent judgment.

110.    Throughout his employment with Defendants, Plaintiff Carrero regularly worked in excess of 40 hours per week.

111.    From approximately July 2018 until on or about January 1, 2019, Plaintiff Carrero worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays through Saturdays (typically 60 hours per week).

112.    On five occasions, Plaintiff Carrero worked from approximately 7:00 a.m. until on or about 5:00 p.m., 5 days a week, and from approximately 7:00 a.m. until on or about 3:00 a.m. on Wednesdays (typically 70 hours per week).

113.    For approximately 10 weeks, Plaintiff Carrero worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays through Saturdays and from approximately 7:00 a.m. until on or about 3:00 p.m. to 5:00 p.m. on Sundays (typically 68 to 70 hours per week).

114.    Throughout his employment, Defendants paid Plaintiff Carrero his wages in cash.

115.    From approximately July 2018 until on or about January 2019, Defendants paid Plaintiff Carrero $18.00 per hour.

116.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carrero regarding overtime and wages under the FLSA and NYLL.

117.    Defendants did not provide Plaintiff Carrero an accurate statement of wages, as required by NYLL 195(3).

118.    Defendants did not give any notice to Plaintiff Carrero, in English and in Spanish (Plaintiff Carrero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

119.    Defendants required Plaintiff Carrero to purchase "tools of the trade" with his own funds—including a laser, a drill kit, and a screwdriver.

*Plaintiff Rodolfo Carvajal*

120.    Plaintiff Carvajal was employed by Defendants from approximately end of June 2018 until on or about December 2018 and for approximately two days in March 2018.

121.    Defendants employed Plaintiff Carvajal as an installer.

122.    Plaintiff Carvajal regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

123.    Plaintiff Carvajal's work duties required neither discretion nor independent judgment.

124.    Throughout his employment with Defendants, Plaintiff Carvajal regularly worked in excess of 40 hours per week.

125.    From approximately June 2018 until on or about August 2018, Plaintiff Carvajal worked from approximately 7:00 a.m. until on or about 5:00 p.m., Mondays through Saturdays and on occasion, some Sundays (typically 60 to 70 hours per week).

126.    From approximately September 2018 until on or about the second week of December 2018, Plaintiff Carvajal worked from approximately 7:00 a.m. until on or about 5:30 p.m., Mondays, Tuesdays, and Thursdays, from approximately 7:00 a.m. until on or about 8:00 p.m. to 10:00 p.m., Wednesdays and Fridays, from approximately 7:00 a.m. until on or about 3:30 p.m., on Saturdays, and from approximately 7:00 a.m. until on or about 3:30 p.m., on some Sundays (typically 68 to 76.5 hours per week).

127.    Throughout his employment, Defendants paid Plaintiff Carvajal his wages in cash.

128.    From approximately the end of June 2018 until on or about December 2018, Defendants paid Plaintiff Carvajal $18.00 per hour.

129.    Defendants did not pay Plaintiff Carvajal any wages for his three-hour introductory training period.

130.    Defendants took improper and illegal deductions from Plaintiff Carvajal's wages; specifically, Defendants deducted 1 hour from Plaintiff Carvajal even if he arrived only 20 minutes late.

131.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carvajal regarding overtime and wages under the FLSA and NYLL.

132.    Defendants did not provide Plaintiff Carvajal an accurate statement of wages, as required by NYLL 195(3).

133.    Defendants did not give any notice to Plaintiff Carvajal, in English and in Spanish (Plaintiff Carvajal's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

134.    Defendants required Plaintiff Carvajal to purchase "tools of the trade" with his own funds—including a laser, drillers, hexagonal tools, plastic hammers, and levels.

*Defendants' General Employment Practices*

135.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

136.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

137.    Defendants paid Plaintiffs their wages in cash and by checks.

138.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

139.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

140.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

141.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

142.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

143.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

144.    Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as

a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly

situated persons (the "FLSA Class members"), i.e., persons who are or were employed by

Defendants or any of them, on or after the date that is three years before the filing of the complaint

in this case (the "FLSA Class Period").

145.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly

situated in that they had substantially similar job requirements and pay provisions, and have been

subject to Defendants' common practices, policies, programs, procedures, protocols and plans

including willfully failing and refusing to pay them the required overtime pay at a one and one-half

their regular rates for work in excess of forty (40) hours per workweek under the FLSA under the

FLSA.

146.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

147.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

148.    At all times relevant to this action, Defendants were Plaintiffs' employers (and

employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards

Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class

members), controlled the terms and conditions of employment, and determined the rate and

method of any compensation in exchange for their employment.

149.    At all times relevant to this action, Defendants were engaged in commerce or in an

industry or activity affecting commerce.

150. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

151. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

152. Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

153. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

154. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

156. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

157. Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

160.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

163.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

164.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

166.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

167.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

168.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

169.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants deducted up to an hour from Plaintiffs regardless of how late they were.

170.    The deductions made from Plaintiffs' wages were not authorized or required by law.

171.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

172.    Plaintiffs were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(d)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(g)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(h)     Awarding Plaintiffs damages for the amount of unpaid overtime compensation, and

for any improper deductions or credits taken against wages as applicable

(i)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(j)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(k)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(l)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(m)    All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

March 4, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

March 8, 2021

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rodolfo Carvajal

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     8 de Marzo de 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

January 6, 2021

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Carrero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                _Jose' Carrero_

Date / Fecha:                     6 de enero de 2021

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

December 21, 2020

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Javier Mora

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         21 de Diciembre 2020

*Certified as a minority-owned business in the State New York*                                    1

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

---

December 21, 2020

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                 Yonathan Garzon

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                  21 de Diciembre 2020

*Certified as a minority-owned business in the State New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                              Telephone: (212) 317-1200
New York, New York 10165                                 Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 23, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Ricardo Alberto Zabaleta Batista
Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       23 de diciembre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

January 5, 2021

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Jorge Ocampo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      08 de marzo 2021